T. B. FLOYD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12221.   Promulgated May 1, 1928.

*Gordon C. Carson, Esq.*, for the petitioner.
*Irwin R. Blaisdell, Esq.*, for the respondent.

OPINION.

TRAMMELL: We will first consider the question as to whether the deficiencies for 1917 and 1919 are barred by the periods of limitation. For 1917 a return was filed on March 31, 1918. The tax was assessed before March 6, 1923. A portion of the assessment was abated but no proceeding for the collection of the tax has been instituted and under the decision in *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346, the collection of the deficiency is now barred.

For 1919, however, the return was filed on March 15, 1920. Five years from that date were allowed by statute within which to assess

and collect the tax for 1919. This gave the respondent until March 15, 1925, to assess and collect the tax unless a consent in writing was entered into in accordance with the statute. Under date of February 28, 1925, within the lawful assessment period, the petitioner and the Commissioner entered into a written consent as provided by section 278 (c) of the Revenue Act of 1924, extending the assessment period until December 31, 1925, and in the event of the mailing of a deficiency notice and an appeal was filed with the Board therefrom, the time for assessment would be further extended until the final decision by the Board. The deficiency notice was mailed December 31, 1925. Since, by virtue of the written consent, the respondent still has the right to assess a deficiency, neither the assessment nor the collection thereof is barred by the period of limitation. The respondent has, under the Revenue Acts of 1924 and 1926, six years from the time of the assessment in which to collect. *Sunshine Cloak & Suit Co.*, 10 B. T. A. 971; *G. L. Ramsey*, 11 B. T. A. 345.

With respect to the deduction claimed on account of the alleged bad debt, it appears that this debt was owing to petitioner from the corporation of which he was the sole stockholder, and that the petitioner voluntarily canceled this obligation and forgave the indebtedness. This is not such a situation as would authorize a deduction on account of a bad debt provided by statute. In order that a debt may be allowed as a deduction as a worthless debt, it must appear that during the taxable year the taxpayer ascertained that the debt could not be collected. Unless the debt was in fact worthless and was ascertained and charged off for that reason during the taxable year, the deduction is not permitted. It does not appear that this was the case with respect to the debt here involved but that the debt was forgiven and canceled. While there is evidence to the effect that the petitioner turned over to the bank, in satisfaction of the bonds and accrued interest, the assets of the corporation, there is no evidence as to the year in which this was done. While the corporation's property was sold to Simmons in 1918 and was taken back some time during that year, the testimony is indefinite as to when the assets were turned over to the bank in settlement of the bonds and interest. A witness testified that this was done within a year after the property was reacquired from Simmons, but the record does not disclose when the property was reacquired from Simmons. It may well have been in 1919 when the assets were turned over to the bank and it became definitely known that any indebtedness which the corporation owed the petitioner could not be paid even if we should disregard the fact that the petitioner had forgiven the indebtedness.

In view of all the evidence relating to this matter, we are of the opinion that the petitioner is not entitled to a deduction claimed on account of the bad debt in 1918.

With respect to the inventory question, it appears from the evidence that the petitioner had been engaged in the cotton business, handling the kind of cotton dealt in during the taxable year, for approximately fifty years and was familiar with the market prices of that character of cotton. He determined the market price of the cotton on hand to be $134,000. On account of the petitioner's long experience and familiarity with the market prices of the property dealt in by him, and the fact that no conflicting or impeaching testimony was introduced, we accept the petitioner's valuation of $134,000 as the market price of his cotton on hand at the close of the calendar year 1919. In our opinion, the market value of this cotton was $134,000 at the close of 1919.

*Judgment will be entered on 15 days' notice, under Rule 50.*